# 2007 DTA 120

**TRIBUNAL DE APELACIONES
REGIÓN JUDICIAL DE BAYAMÓN
PANEL VI**

USDA RURAL DEVELOPMENT, A/C/C
Demandante-Peticionario

v.

RIGOBERTO ORTEGA RIVERA
Demandado-Recurrido

Núm. KLCE-2007-00986

San Juan, Puerto Rico, a 17 de octubre de 2007

Panel integrado por su Presidente, el Juez Rivera Román,
la Juez Coll Martí y el Juez Vizcarrondo Irizarry

Rivera Román, Juez Ponente

## TEXTO COMPLETO DE LA SENTENCIA

El expediente ante nuestra consideración se relaciona a un cobro de dinero promovido por una entidad que ha financiado la adquisición de una vivienda. Debido a los atrasos del deudor y en estricta aplicación del contrato de financiamiento, se declaró la deuda vencida y se reclamaron los atrasos.

El señor Rigoberto Ortega Rivera fue notificado de la demanda, se le anotó la rebeldía y se dictó sentencia en rebeldía.

El mismo día que se dictó la sentencia, una madre y sus dos hijos menores de edad quienes tienen un derecho de hogar seguro reconocido sobre la propiedad comparecieron al Tribunal con una moción de intervención. Éstos alegaron que no fueron notificados ni advertidos de la radicación de la demanda, lo que les privaría del lugar de residencia y su derecho de hogar seguro.

Debemos responder la siguiente interrogante: ¿El Tribunal de Primera Instancia debió conceder una audiencia para examinar los méritos de cada una de las alegaciones formuladas por la señora y sus hijos menores de edad antes de dictar una sentencia en rebeldía que les prive de su derecho a hogar seguro y su residencia?

### I

Veamos los hechos que surgen de las alegaciones contenidas en el expediente. El señor Rigoberto Ortega Rivera y la señora Luz María Ramos Velilla contrajeron matrimonio el 20 de abril de 1985 y procrearon un niño

de nombre Rigoberto Ortega Ramos. La pareja se divorció por consentimiento mutuo el 10 de agosto de 1990.

Posteriormente, la señora Ramos Velilla y el señor Ortega Rivera contrajeron matrimonio nuevamente el 15 de julio de 1993 y procrearon una segunda hija que nació el 19 de junio de 1996. La pareja se divorció por segunda vez, por la causal de separación, el 4 de octubre de 2001. Conforme se desprende de la sentencia de divorcio, el Juez de instancia dispuso como hogar seguro a favor de la señora Ramos Velilla y sus dos hijos menores *"la vivienda adquirida durante el matrimonio"*, sólo pudiendo disponer de ésta mediante acuerdo entre las partes o por la emancipación de los hijos.

Se desprende de las alegaciones que el señor Ortega Rivera adquirió la propiedad objeto de controversia durante el tiempo que estuvo divorciado entre el primer y segundo matrimonio, el 18 de septiembre de 1992. La propiedad ubica en el Bo. Pueblo del Municipio de Corozal. Conforme se desprende del contrato de hipoteca entre el señor Ortega Rivera y los recurridos USDA Rural Development, éstos otorgaron una hipoteca por la suma de $50,000 mediante dos pagarés, uno por $45,000 y otro por $5,000, con intereses al 8½ por ciento anual con vencimiento a 33 años.

El señor Ortega Rivera incumplió con los términos de la hipoteca y del pago del pagaré por lo cual se presentó en su contra una demanda en cobro de dinero. El señor Ortega Rivera no contestó la reclamación judicial, se anotó la rebeldía y el Tribunal de Instancia dictó sentencia en rebeldía a favor de USDA el 29 de mayo de 2007.

El mismo día 29 de mayo, la señora Ramos Velilla presentó ante el Tribunal de Primera Instancia una moción urgente de intervención en la cual relató los eventos de matrimonio y divorcio y la adquisición de la propiedad. La señora Ramos Velilla alegó que desde que se adquirió la propiedad ella ha aportado para el pago de ésta, pues pagó los gastos de cierre, suscribió la solicitud de subsidio bajo el caso 63-061-582538235, sometió declaraciones juradas en las que hace constar que el señor Ortega Rivera estaba desempleado y que ella era la que trabajaba, todo ello para sostener que USDA conocía de su participación y que tiene derecho a intervenir en la reclamación judicial de cobro de dinero. Véase los documentos en el apéndice de la peticionaria, páginas 11-14.

El 18 de junio de 2007, la señora Ramos Velilla presentó al Tribunal de Instancia una moción que tituló *Moción solicitando se deje sin efecto sentencia dictada el 29 de mayo de 2007* y notificación de 4 de junio de 2007 y alegó que había presentado una moción de intervención, que era parte indispensable en el proceso, que debió brindársele la oportunidad de comparecer al Tribunal en reclamo de sus derechos y que el Tribunal estaba obligado a celebrar una audiencia evidenciaria antes de adjudicar el caso. El Tribunal de Instancia dictó un escueto *No ha lugar* en cuanto a ambas mociones.

Inconforme con la determinación, la señora Ramos Velilla presentó una petición de *certiorari* en el cual sostiene que erró el Tribunal de Instancia al no conceder las mociones de intervención y que se deje sin efecto la sentencia y al no dejar sin efecto la sentencia.

USDA acudió en oposición al *certiorari* y sostiene, entre otras cosas, que la acción judicial es una en cobro de dinero entre el acreedor y el único deudor, señor Ortega Rivera, por lo cual actuó correctamente el Tribunal de Instancia al concluir que no se habían efectuado los pagos y que procedía declarar vencida la deuda y conceder el cobro ordenado. Teniendo el beneficio de la comparecencia de ambas partes, procedemos a resolver.

## II

**1. El derecho a Hogar seguro**

Los casos de familia están revestidos del más alto interés público y tienen, además, un carácter *sui generis*. En virtud de lo anterior, el Tribunal Supremo ha expresado que las determinaciones de alimentos y custodia de menores no constituyen propiamente cosa juzgada y que están sujetas a revisión judicial si ocurre un cambio de circunstancias que así lo justifique. *Figueroa v. Del Rosario*, 147 D.P.R. 121, 128 (1998).

En cualquier caso, las determinaciones del Tribunal deben guiarse única y exclusivamente por el bienestar y los mejores intereses de los menores concernidos. *Ortiz v. Meléndez*, **2005 J.T.S. 25**, 164 D.P.R. ___ (2005); *Depto. de la Familia v. Soto*, 147 D.P.R. 618, 630 (1999). Atado al bienestar de los menores se encuentra su derecho a gozar de un hogar donde vivir. *Rodríguez v. Pérez*, **2004 J.T.S. 66**, 161 D.P.R. ___ (2004).

En Puerto Rico, el derecho a hogar seguro ha sido uno evolutivo. ■ El Tribunal Supremo reconoció el derecho que cobija al padre o madre custodio a reclamar la propiedad ganancial como hogar seguro por lo menos hace 70 años en *Carrillo v. Santiago*, 51 D.P.R. 545 (1937). Luego en *Cruz Cruz v. Irizarry Tirado*, 107 D.P.R. 655, 660 (1978), el Tribunal reiteró:

*"La preservación del hogar seguro familiar para beneficio del grupo formado por madre e hijos tiene primacía sobre el derecho de propiedad del cónyuge en los activos de la disuelta sociedad conyugal. Su reclamación de gananciales en la vivienda que aloja a esta familia quedará paralizada por el tiempo que subsistan las circunstancias que le dan calidad de hogar seguro y mientras la recta razón de equidad ampare el derecho de sus ocupantes."*

La Asamblea Legislativa aprobó la Ley 184 de 26 de diciembre de 1997 mediante la cual se adicionó el Artículo 109-A al Código Civil, 31 L.P.R.A. sec. 385a. Dicho precepto establece el derecho del padre o madre custodio a reclamar como hogar seguro la vivienda que constituyó el hogar del matrimonio y que pertenece a ambos ex cónyuges en beneficio de sus hijos menores de edad, mayores de edad hasta los 25 años si están estudiando, e incapacitados mientras dure la incapacidad.

La preservación del hogar seguro para el grupo familiar compuesto por el ex cónyuge custodio y sus hijos tiene primacía sobre el derecho de propiedad del ex cónyuge no custodio en el inmueble reclamado. *Cruz Cruz v. Irizarry Tirado, supra*. El Tribunal Supremo ha sostenido que reconocer el derecho a hogar seguro a favor del ex cónyuge custodio no trasmite el título de la propiedad ni afecta el interés propietario de las partes. La concesión de hogar seguro meramente pospone o paraliza la reclamación de su participación en la propiedad del padre o madre no custodio. *Cruz Cruz v. Irizarry Tirado, supra*, pág. 661; *Vega Acosta v. Tribunal Superior*, 89 D.P.R. 408, 412 (1963); *González v. Corte Municipal*, 54 D.P.R. 18, 20 (1938).

El hogar seguro podrá reclamarse desde el momento en que surge la necesidad de una vivienda segura, cómoda y adecuada. Por tanto, la ley reconoce que la solicitud puede hacerse en unión con la demanda de divorcio, durante el proceso, o luego de decretarse el mismo. Una vez reclamado, expresa la ley, *"el juzgador determinará lo que en justicia procede de acuerdo con las circunstancias particulares de cada situación"*.

En la exposición de motivos de la Ley 184, *supra*, la Asamblea Legislativa aclaró que no debe entenderse que el hogar seguro es un derecho automático en todo caso de liquidación de gananciales en que el padre o madre custodio así lo reclame. Citando con aprobación el caso de *Cruz Cruz v. Irizarry Tirado, supra*, la Asamblea Legislativa expresó que el Juez que conceda el reclamo a hogar seguro deberá resolver según la equidad del caso.

Estamos ante uno de los casos en que *"por mandato del legislador la equidad se incorpora como parte del Derecho positivo y deja libertad al juzgador para que echando a un lado el rigor jurídico prefiera a la solución estrictamente legal, una con sentido moral y humano que haga especial justicia al caso concreto ante él"*. *Cruz Cruz v. Irizarry Tirado, supra*, pág. 660.

Queda claro que el reconocimiento del derecho a hogar seguro no es automático y que, por el contrario, depende de las circunstancias particulares de cada caso. La solución de un reclamo de hogar seguro está, pues, en la equidad.

En nuestro sistema de derecho, la equidad está enraizada en el valor más supremo: la Justicia misma. La aplicación de la equidad al resolver una controversia equivale a emplear principios generales de derecho, los usos y las costumbres aceptadas y establecidas. Artículo 7 del Código Civil, 31 L.P.R.A. sec. 7; *Silva v. Comisión Industrial*, 91 D.P.R. 891, 899 (1965). La equidad remite al juzgador a un proceso adjudicativo en busca de la recta razón y de la médula racional y moral del Derecho. *Rodríguez v. Pérez*, **2004 J.T.S. 66**, 161 D. P.R. ___ (2004); *Cruz Cruz v. Irizarry Tirado, supra,* pág. 660.

De esta forma se reconoce que la discreción judicial es el instrumento más poderoso para atemperar el rigor de la norma con el fin de lograr una justicia más real, individual y humana, siempre dentro del marco del sistema constitucional y de la ley vigente. *Rodríguez v. Pérez, supra*; *Banco Metropolitano v. Berríos*, 110 D.P. R. 721, 725 (1981).

Para estar en posición de hacer justicia en el ejercicio de su discreción es necesario que el juzgador conozca de todos los elementos que intervienen en una controversia. S. Torres Peralta, *La Ley de Sustento de Menores y el Derecho Alimentario en Puerto Rico,* San Juan, 2006, Tomo 1, pág. 5.19.

El padre o madre custodio que promueve una reclamación de hogar seguro tiene el peso de establecer las circunstancias que le dan la calidad de hogar seguro a la vivienda donde se estableció el hogar conyugal. *Cruz Cruz v. Irizarry Tirado, supra,* pág. 660. Del texto del Artículo 109-A del Código Civil, *supra*, se desprenden los requisitos esenciales que deberá establecer el peticionario. Estos son: que es el progenitor custodio; que reside con sus hijos menores de edad, mayores de edad hasta los 25 años que estudian o incapacitados; es jefe de familia; el inmueble pertenece a ambos ex cónyuges; y que existe una necesidad de una vivienda. Un análisis de la jurisprudencia refleja otros hechos y criterios considerados por el Tribunal Supremo:

*"1. se trata de una legítima necesidad de la familia. Cruz Cruz v. Irizarry Tirado, supra, pág. 661; Quiñones v. Reyes, 72 D.P.R. 304, 308 (1951)*

*2. la familia es numerosa. Cruz Cruz v. Irizarry Tirado, supra, pág. 661;*

*3. ingresos o capacidad para generar ingresos, Cruz Cruz v. Irizarry Tirado, supra, pág. 661;*

*4. el inmueble pertenece a ambos excónyuges y fue donde se estableció el hogar conyugal. Rodríguez Ramos v. Pérez Santiago, 2004 J.T.S. 66, 161 D.P.R. ___ (2004);*

*5. es el único hogar que el menor ha conocido. Rodríguez Ramos v. Pérez Santiago, supra;*

*6. el padre custodio no tiene otra vivienda y el padre no custodio tiene sus necesidades de vivienda cubiertas. Cruz Cruz v. Irizarry Tirado, supra, pág. 657;*

*7. la conocida escasez de vivienda adecuada Cruz Cruz v. Irizarry Tirado, supra, pág. 661."*

Resulta evidente que la situación económica de cada uno de los ex cónyuges, incluyendo su participación en los bienes de la extinta sociedad legal de gananciales y los bienes privativos, deberán ser considerados por el Tribunal al hacer la determinación sobre el reclamo al derecho de hogar seguro. S. Torres Peralta, *op. cit.,* pág. 5.25. Por tanto, previo a la adjudicación de una reclamación de hogar seguro, el Tribunal podrá permitir a las partes descubrir prueba y celebrar una vista evidenciaria de manera que tenga oportunidad de conocer todas las

circunstancias relativas a la reclamación.

Una vez adjudicado el derecho a hogar seguro, el mismo subsiste mientras existan las circunstancias que le dan las características de hogar seguro y mientras la equidad ampare el derecho de sus ocupantes. *Cruz Cruz v. Irizarry Tirado, supra*, pág. 660.

Al momento histórico en que se adoptó la Ley Hipotecaria no se había elevado a derecho fundamental el derecho a la vivienda. La ley promulgada cumplía propósitos de valor social y fomentaba la adquisición de viviendas. Hoy día, se advierte la necesidad de evitar que se convierta en un instrumento de despojo que derrote ese valor. *Banco de Santander v. Rosario Cirino*, 126 D.P.R. 591, 602-603 (1990); *Housing Investment Corp. v. Luna*, 112 D.P.R. 173, 175 (1982).

## 2. Partes indispensables y el derecho de intervención

Una parte indispensable es aquella persona cuyos derechos e intereses podrían quedar destruidos o ineludiblemente afectados por una decisión final estando esa persona ausente en el litigio. *Souffront v. A.A.A.*, **2005 J.T.S. 56**, 164 D.P.R. ___ (2005); *Cepeda Torres v. García Ortiz*, 132 D.P.R. 698, 704 (1993). Las Reglas 16.1 y 16.2 de las de Procedimiento Civil, 32 L.P.R.A. Ap. III, son las que regulan lo concerniente a la acumulación en un pleito de una parte indispensable.

La Regla 16.1 de las de Procedimiento Civil, *supra*, dispone que toda persona que tuviere un interés común sin cuya presencia no pueda adjudicarse la controversia, se hará formar parte del pleito acumulándose como parte demandante o demandada, según corresponda. *Consejo v. Jetter*, **2006 J.T.S. 188**, 169 D.P.R. ___ (2006). El término interés común al que se refiere la regla no se refiere a cualquier interés en el pleito, sino a un interés de tal orden que impida la confección de un decreto sin afectarlo. *Hernández Agosto v. López Nieves*, 114 D.P. R. 601, 607 (1983).

El propósito de esta Regla es evitar que la persona ausente sea privada de su propiedad sin el debido proceso de ley y que el remedio emitido por los tribunales sea completo. *Romero v. S.L.G. Reyes*, **2005 J.T.S 66**, 164 D.P.R. ___ (2005); *Cepeda Torres v. García Ortiz, supra*. La Regla, además, busca proteger a las personas ausentes de los posibles efectos perjudiciales de una sentencia judicial y evitar la multiplicidad de pleitos. *Rodríguez Rodríguez v. Moreno Rodríguez*, 135 D.P.R. 623, 627 (1994); *Hernández Agosto v. Romero Barceló*, 112 D.P.R. 407, 412-413 (1982). Un planteamiento de falta de parte indispensable es tan relevante y vital que puede presentarse en cualquier momento, inclusive por primera vez en apelación o puede suscitarse *sua sponte* por un tribunal apelativo, ya que en ausencia de parte indispensable, el tribunal carece de jurisdicción. *Agosto v. López Nieves, supra*, pág. 603. La omisión de incluir una parte indispensable es motivo para desestimar un litigio, aunque no es impedimento para que, a solicitud de la parte interesada, el foro de instancia conceda la oportunidad de traer al pleito a la parte originalmente omitida, siempre que el tribunal pueda adquirir jurisdicción sobre la misma. *Meléndez Gutiérrez v. E.L.A.*, 113 D.P.R. 811, 816 (1983). Una sentencia dictada sin que se incluya una persona que reúna los requisitos de parte indispensable no es válida. *Unisys v Ramallo Brothers*, 128 D.P.R. 842, 859 (1991).

Por otro lado, la Regla 16.2 de las de Procedimiento Civil, 32 L.P.R.A. Ap. III, R. 16.2, regula la acumulación deseable de un tercero como parte. La Regla trata el problema de aquellas personas que tienen un interés en el pleito, pero no tienen que estar indispensablemente en el mismo. Rafael Hernández Colón, *Práctica Jurídica de Puerto Rico: Derecho Procesal Civil*, Michie, 1997, pág. 116. La Regla 16.2 de las de Procedimiento Civil, *supra*, autoriza a los tribunales de instancia a acumular aquellas personas sujetas a su jurisdicción, que a pesar de no ser partes indispensables, es necesaria su comparecencia para conceder un remedio completo y final a las personas que son parte en el pleito. En el ejercicio de su discreción, el tribunal debe considerar, entre otras cosas, si la sentencia a dictarse en su momento le pondría punto final a la

controversia entre las personas que ya son parte del litigio. *Granados v. Rodríguez Estrada II*, 124 D.P.R. 593, 604 (1989).

En relación a cómo los tribunales deben interpretar la Regla 16 de las de Procedimiento Civil, *supra*, el Tribunal Supremo expuso en *Romero v. S.L.G. Reyes, supra,* que se *"requiere de un enfoque pragmático, es decir, requiere de una evaluación individual a la luz de las circunstancias particulares que se presentan y no de una fórmula rígida para determinar su aplicación. Por lo tanto, los tribunales tienen que hacer un juicioso análisis que envuelva la determinación de los derechos de un ausente y las consecuencias de no ser unido como parte en el procedimiento. Es importante determinar si el tribunal podrá hacer justicia y conceder un remedio final y completo sin afectar los intereses del ausente."* (Citas omitidas).

Las Reglas de Procedimiento Civil permiten a una persona solicitar la intervención en un pleito como cuestión de derecho o mediante intervención permisible. Regla 21.1 y 21.2 de las de Procedimiento Civil, 32 L. P.R.A. Ap. III. La intervención como cuestión de derecho, Regla 21.1 de las de Procedimiento Civil, *supra,* establece, en lo pertinente, que cualquier persona tiene derecho a intervenir en un pleito cuando reclame algún derecho o interés en la propiedad o asunto objeto del pleito que pudiese de hecho verse afectado con la disposición final del caso.

La importancia de la intervención como cuestión de derecho es que ofrece protección a un grupo indefinido de personas con variados intereses, en ocasiones de gran importancia pecuniaria o legal. *R. Mix Concrete v. R. Arellano & Co.,* 110 D.P.R. 869, 873 (1981). Esta Regla debe interpretarse libremente a la luz de los objetivos que persigue, *Chase Manhattan Bank v. Nesglo,* Inc., 111 D.P.R. 767, 769-770 (1981), siendo el criterio para determinar si se reconoce o no el derecho de intervenir en un pleito a un tercero uno práctico y no conceptual. *R. Mix Concrete v. R. Arellano & Co., supra.* Los intereses que la parte interventora puede proteger mediante la moción de intervención son tan amplios como todos aquellos intereses protegidos por cualquier legislación. José Cuevas Segarra, *Tratado de Derecho Procesal Civil,* San Juan, **Publicaciones J.T.S.,** Tomo I, pág. 434. La naturaleza del interés propietario no se limita al título o la posesión del inmueble o del bien mueble. Puede, también, conllevar acciones que envuelvan unos gravámenes o cargas sobre éstos, como por ejemplo: derechos de autor, patentes, intimidad, consideraciones económicas o ambientales. Cuevas Segarra, *op cit.,* págs. 434-435.

Ahora bien, no se debe permitir las intervenciones indiscriminadas en los pleitos. *Rivera v. Morales,* 149 D. P.R. 672, 689 1999. El tribunal, al determinar si reconoce a un solicitante el derecho de intervenir, tiene que evaluar si existe de hecho un interés que amerite protección y si quedaría afectado, como cuestión práctica, por la ausencia del interventor en el caso. *Chase Manhattan Bank v. Nesglo, Inc., supra.* pág. 770. El análisis que realice el tribunal puede variar de pleito en pleito dependiendo del equilibrio a lograrse entre el interés en la economía procesal representada por la solución en un sólo pleito de varias cuestiones relacionadas entre sí y el interés en evitar que los pleitos se compliquen y demoren innecesariamente. *Chase Manhattan Bank v. Nesglo, Inc., supra.,.*

Por su parte, la Regla 21.2 de las de Procedimiento Civil, *supra,* establece que mediante oportuna solicitud el tribunal de instancia podrá permitir a cualquier persona intervenir en un litigio cuando por ley se le confiera un derecho condicional a intervenir o cuando la reclamación o defensa del solicitante y el pelito principal tuvieren en común una cuestión de hecho o de derecho. *Crespo v. Cintrón,* 159 D.P.R. 290, 301-302 (2003). El tribunal, en el ejercicio de su discreción, permitirá la intervención luego de poner en la balanza los intereses de todos, y si ésta no demora indebidamente el pleito ni perjudica la adjudicación de los derechos de las partes originales. Rafael Hernández Colón, *op cit.,* págs. 122-123.

### 3. Moción de relevo de sentencia, Regla 49.2
### Sobre el relevo de sentencia

La Regla 49.2 de las de Procedimiento Civil, 32 L.P.R.A. Ap. III, establece el mecanismo procesal disponible a las partes y a sus abogados para solicitar al Tribunal que les releve de los efectos de una sentencia, orden o procedimiento cuando existe causa justificada.

La regla establece las razones que facultan a un Tribunal para ejercer su discreción y dejar sin efecto una sentencia dictada. Entre estas se mencionan: el error, inadvertencia o negligencia excusable; descubrimiento de prueba esencial que, a pesar de una debida diligencia, no pudo haber sido descubierta a tiempo para solicitar un nuevo juicio; la falsa representación u otra conducta impropia de una parte adversa y la situación en que la sentencia dictada sea nula o haya sido satisfecha.

El remedio que provee la regla permite al Tribunal hacer un balance entre dos principios importantes en nuestro ordenamiento jurídico. De una parte, el interés de que los procedimientos judiciales tengan un fin cierto y, de otro, que en todo caso se haga justicia. *Piazza Vélez v. Isla del* Río, 158 D.P.R. 440, 448 (2003); *Municipio de Coamo v. Tribunal Superior*, 99 D.P.R. 932, 937 (1971). En este sentido, el Tribunal Supremo ha advertido de usar los mecanismos contra sentencias u órdenes como un sustituto a los remedios de revisión o reconsideración que proveen las reglas. *Vega v. Emp. Tito Castro, Inc.*, 152 D.P.R. 79, 87 (2000); *Olmeda Nazario v. Sueiro Jiménez*, 123 D.P.R. 294, 299 (1989). *Véase*, además, Cuevas Segarra, *op. cit.*, T. II, pág. 782.

La decisión de si otorgar el relevo de sentencia descansa en la sana discreción de los tribunales de instancia, salvo los casos de nulidad o cuando la sentencia haya sido satisfecha en cuyo caso es obligatorio concederla. *Náter Cardona v. Ramos Muñiz*, **2004 J.T.S. 135**, 162 D.P.R. \_\_\_ (2004); *Rivera v. Algarín*, 159 D.P.R. 482, 490 (2003).

Al evaluar una solicitud de relevo de sentencia, el Tribunal de instancia no debe entrar a dilucidar nuevamente los derechos de las partes ni las controversias dirimidas durante el juicio. La única cuestión a resolver es si la parte promovente satisface los requisitos estatutarios y jurisprudenciales de la Regla 49.2, *supra*. En lo que respecta a los tribunales apelativos, nuestra función revisora se limita a resolver si el tribunal *a quo* abusó de su discreción al denegar una solicitud a esos efectos.

El Tribunal Supremo ha establecido ciertos criterios inherentes a la Regla 49.2 de Procedimiento Civil, *supra*, –tales como si el peticionario tiene una buena defensa en sus méritos, el tiempo que media entre la sentencia y la solicitud de relevo, el perjuicio que sufriría la parte contraria si se concede el relevo y el perjuicio que sufriría el promovente de no ser concedido el relevo solicitado– que deben tomarse en consideración al atender una solicitud de relevo de sentencia. *Neptune Packing Corp. v. Wackenhut Corp.*, 120 D.P.R. 283, 294 (1988).

Como regla general, la existencia de una defensa debe siempre inclinar la balanza a favor de una vista para que el tribunal pase juicio sobre si la misma procede. Ciertamente, no es obligatorio celebrar una vista en todos los casos en que se invoque la Regla 49.2. En *Ortiz Serrano v. Ortiz Díaz*, 106 D.P.R. 445, 449 (1977), el Tribunal Supremo explicó que debe celebrarse una vista cuando las circunstancias así lo exijan. Así pues, procede celebrar una vista cuando para sustanciar lo alegado en la moción de relevo de sentencia es necesario presentar prueba. En lo pertinente, el Tribunal Supremo expresó: *"[s]iempre que ésa sea la situación, es decir, que se invoquen razones válidas que requieran la presentación de prueba para sustanciarlas, la celebración de una vista será mandatoria"*.

### III
Ocurren dos eventos paralelos el día 29 de mayo de 2007 que afectan nuestra determinación. Primero, el

Tribunal de Instancia declaró con lugar la sentencia en cobro de dinero en rebeldía. Segundo, la señora Ramos Velilla presentó al Tribunal una moción de intervención e invocó: (1) que USDA conoce de su participación, pues suscribió los documentos de la solicitud de subsidio y los gastos de cierre desde el origen de la contratación, (2) que ella pagaba la deuda hipotecaria, (3) que en la sentencia de divorcio se le reconoció un derecho de hogar seguro junto a sus hijos menores sobre la propiedad objeto de controversia y se le ha privado de éste sin brindársele la oportunidad de ser oída. Luego, la señora Ramos Velilla radicó una moción para que se dejara sin efecto la sentencia el 6 de junio y adujo que es parte indispensable y que la sentencia no debió ser dictada en rebeldía.

La naturaleza y amplitud de los derechos reclamados por la señora Ramos Velilla deben ser considerados con cuidado. Privar a menores de edad del derecho de hogar seguro que le ha sido reconocido mediante una sentencia de un Tribunal con jurisdicción, siempre plantea un asunto de alto interés público que debe ser ponderado cuidadosamente.

En el caso ante nuestra consideración, el Juez de instancia rechazó la solicitud con un escueto *no ha lugar*, sin evaluar las consideraciones de política pública planteadas. A nuestro juicio, la solicitud de intervención primero, y luego, la solicitud para que se relevara la sentencia, debieron ser consideradas, por lo menos como una petición de reconsideración a la sentencia, que ameritaba ser acogida para evaluación, estudio y adjudicación. Se trata de privar a una parte y a menores de edad de su derecho a hogar seguro, reconocido mediante sentencia final y firme del Tribunal sin permitirles ser oídos.

No pretendemos prejuzgar la validez de los argumentos esbozados por la señora Ramos Velilla ni del USDA. Entendemos que el Juez de instancia debió brindar la oportunidad para escuchar los planteamientos, armonizar los intereses en controversia, si ello era posible, y adjudicarlos en los méritos y conforme a derecho.

Resolvemos, por tanto, que el Juez de instancia debió acoger la moción de intervención como una moción de reconsideración y brindarle a la señora Ramos Velilla y a sus hijos menores la oportunidad de comparecer al Tribunal a exponer los derechos que reclama tener en protección del hogar seguro de sus hijos menores y luego adjudicar las controversias en los méritos.

## IV

Por todo lo antes expuesto, resolvemos expedir el auto de *certiorari* y revocar la resolución del Tribunal de Primera Instancia de 21 de junio de 2007. Se devuelve el expediente al Tribunal de Primera Instancia para que actúe conforme a lo aquí resuelto.

Así lo pronunció el Tribunal y lo certifica la Secretaria.

Lcda. María Elena Pérez Ortiz
Secretaria del Tribunal de Apelaciones